# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Ocwen Loan Servicing, LLC,

    Plaintiff

v.

SFR Investments Pool 1, LLC; and Sundance at the Shadows Homeowners' Association,

    Defendants

ALL OTHER CLAIMS AND PARTIES

Case No.: 2:17-cv-01757-JAD-VCF

**Order Granting Summary Judgment in Favor of Plaintiff on Federal Foreclosure Bar, Dismissing Remaining Claims, and Closing Case**

[ECF Nos. 56, 57]

Nevada law holds that a properly conducted nonjudicial foreclosure sale by a homeowners' association to enforce a superpriority lien extinguishes the first deed of trust. But when that deed of trust belongs to government-sponsored lender Freddie Mac, and the foreclosure sale occurs while Freddie Mac is under the conservatorship of the Federal Housing Finance Agency (FHFA) and without the agency's consent, federal law shields that security interest from extinguishment. That shield is known as the Federal Foreclosure Bar.

Freddie Mac's loan servicer, Ocwen Loan Servicing, LLC, brings this quiet-title action to determine the effect of a 2013 nonjudicial foreclosure sale on the deed of trust securing the mortgage on a home. Because Ocwen has shown that the Federal Foreclosure Bar prevented that sale from extinguishing the deed of trust, and that this suit is not time-barred, I grant summary judgment in its favor on the quiet-title claim that is based on that theory. But because Ocwen's secondary quiet-title theory—that Nevada's statutory foreclosure scheme was unconstitutional—

fails as a matter of law, I grant the foreclosure-purchaser defendant's motion for summary judgment on that claim and close this case.

## Background

The Federal Home Loan Mortgage Corporation, better known as Freddie Mac, which has been under the conservatorship of the FHFA since 2008, purchased the mortgage on the home located at 5858 Hollingshed Street in North Las Vegas, Nevada, in 2007, along with the deed of trust that was securing that mortgage.[1] The deed of trust has been assigned several times to various servicing agents as Freddie Mac's nominees, and Ocwen is currently servicing the loan.[2] The home is located in the Shadows common-interest community and subject to the Sundance at the Shadows Homeowners' Association's codes, covenants, and restrictions (CC&Rs), which require the owners of property within this planned development to pay certain assessments.[3]

The Nevada Legislature gave homeowners associations (HOAs) a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[4] When the owners of this home fell behind on assessments, the Sundance at the Shadows HOA sold it to SFR Investments Pool 1, LLC in such a nonjudicial foreclosure sale on August 2, 2013.[5] The sale recorded five days later.[6]

---

[1] ECF No. 56-1 at 4, ¶ 5(h).
[2] *Id.* at ¶ 5(k).
[3] ECF No. 5-3 at 23 (planned-unit-development rider).
[4] Nev. Rev. Stat. § 116.3116; *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 409 (Nev. 2014).
[5] ECF No. 5-10 (Notice of Default and Election to Sell); ECF No. 5-11 (Notice of Trustee's Sale). I take judicial notice of all recorded documents in the record.
[6] ECF No. 5-12 at 2.

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[7] But the Federal Foreclosure Bar in 12 U.S.C. § 4617(j)(3) creates an exception to that rule.[8] This safeguard is contained in the Housing and Economic Recovery Act (HERA, codified at 12 U.S.C. § 4511 et seq.), which went into effect in 2008, established the FHFA, and placed Freddie Mac under that agency's conservatorship.[9] Under HERA's Federal Foreclosure Bar, when Freddie Mac is the beneficiary of the deed of trust at the time of the foreclosure sale and Freddie Mac is under the conservatorship of the FHFA, the deed of trust is not extinguished and instead survives the sale unless the agency affirmatively relinquished that interest.[10]

Ocwen filed this action[11] against the foreclosure-sale buyer and the HOA, asserting quiet-title claims based on two independent theories: (1) the Federal Foreclosure Bar prevented the foreclosure sale from extinguishing the deed of trust, and (2) the sale did not extinguish the deed of trust because Nevada's HOA foreclosure scheme was unconstitutional as a Ninth Circuit panel

---

[7] *SFR*, 334 P.3d at 419.

[8] *See Berezovsky v. Moniz*, 869 F.3d 923, 927 n.1 (9th Cir. 2017).

[9] *Berezovsky*, 869 F.3d at 925.

[10] *Id.* at 933; *Saticoy Bay LLC Series 9641 Christine View v. Fed. Nat'l Mortg. Ass'n*, 417 P.3d 363, 368 (Nev. 2018) ("Because Fannie Mae was under the FHFA's conservatorship at the time of the homeowners' association foreclosure sale, the Federal Foreclosure Bar protected the deed of trust from extinguishment.").

[11] Both the Nevada Supreme Court and the Ninth Circuit have held that loan servicers have standing to assert the Federal Foreclosure Bar. *See Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 396 P.3d 754, 758 (Nev. 2017); *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. Apr. 3, 2019).

held in *Bourne Valley Court Trust v. Wells Fargo Bank*.[12]  As I found when denying the defendants' motions to dismiss last year, these claims are the type of quiet-title claim recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—actions "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[13]  The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[14]

SFR crossclaims against Ocwen, asserting claims entitled "declaratory relief/quiet title" and "preliminary and permanent injunction."[15]  Because injunctive relief is a remedy and not an independent cause of action, I find that SFR's claims are properly construed as a single equitable claim for quiet title of the same sort as Ocwen's.

Ocwen moves for summary judgment, contending that the Federal Foreclosure Bar saved Freddie Mac's deed of trust on this property from extinguishment.[16]  SFR opposes that motion and moves for summary judgment in its own favor, arguing that Ocwen's claims are time-barred, that Freddie Mac's interest is unenforceable because it was not recorded, that Ocwen has not

---

[12] ECF No. 8 (*Bourne Valley Court Trust v. Wells Fargo Bank*, 832 F.3d 1154 (9th Cir. 2016)).  I have already held that, although each of these theories spans multiple claims—nested under quiet title, declaratory relief, and injunctive relief captions—because the majority of these "claims" are more appropriately construed as requests for remedies, I construe Ocwen's amended complaint to contain just two quiet-title claims: one based on the Federal Foreclosure Bar, and the other based on *Bourne Valley*.  *See* ECF No. 35 at 6–7.

[13] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[14] *Id.* at 1112; *see also* ECF No. 35 (Order Denying Motions to Dismiss and for Leave to Amend).

[15] ECF No. 36.

[16] ECF No. 56.

4

sufficiently proven that Freddie Mac owns the deed of trust and that Ocwen has a servicing relationship with it, and that the claims founded on due process fail because *Bourne Valley* is no longer good law.[17]

## Discussion

**A.    Standards for crossmotions for summary judgment**

The principal purpose of the summary-judgment procedure is to isolate and dispose of factually unsupported claims or defenses.[18] The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine issue of material fact.[19] If the moving party satisfies its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show a genuine issue of material fact for trial.[20]

Who bears the burden of proof on the factual issue in question is critical.  When the party moving for summary judgment would bear the burden of proof at trial (typically the plaintiff), "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[21]  Once the moving party establishes the absence of a genuine issue of fact on each issue material to its case, "the burden then moves to the opposing party, who must

---

[17] ECF Nos. 57, 61.

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[19] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[20] Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 819 (9th Cir. 1995).

[21] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

5

present significant probative evidence tending to support its claim or defense."[22]  When instead the opposing party would have the burden of proof on a dispositive issue at trial, the moving party (typically the defendant) doesn't have to produce evidence to negate the opponent's claim; it merely has to point out the evidence that shows an absence of a genuine material factual issue.[23]  The movant need only defeat one element of the claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[24]

**B.     Ocwen's claims are timely.**

Last year, in response to SFR's motion to dismiss, I held that Ocwen's claims are governed by the four-year statute of limitations in Nevada's catch-all statute, NRS 11.220.  And because those claims were filed just short of that four-year deadline, they are timely.[25]  SFR returns to its timeliness challenge, arguing that Ocwen's quiet-title claims are subject to the three-year deadline for tort claims under HERA and that I should reconsider and reverse my prior ruling based on its "additional reasoning."[26]

Section 4617(b)(12) of HERA, entitled "Statute of limitations for actions brought by conservator or receiver," provides "the applicable statute of limitations with regard to any action brought by the Agency as conservator or receiver" but identifies only two categories of claims:

---

[22] *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991) (citation omitted).

[23] *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990); *Celotex*, 477 U.S. at 323–24.

[24] *Celotex*, 477 U.S. at 322.

[25] ECF No. 35

[26] ECF No. 57 at 9–13.

contract and tort.[27] The limitations period for "any contract claim" is the longer of six years or "the period applicable under State law"; and for "any tort claim," the deadline is the longer of three years or any applicable state-law period.[28]

It would appear at first blush that HERA's limitations periods could not apply here because Ocwen's claims are neither tort nor contract claims—they're equitable quiet-title claims. But courts interpreting HERA have held that § 4617(b)(12) applies to **any** claim brought by the FHFA as conservator "and supplants any other time limitations that otherwise might have applied."[29] So, as I explained in *FHFA v. LN Management LLC, Series 2937 Barboursville*, the courts must perform "the square-peg-in-round-hole task of sorting [] equitable quiet-title claims into the contract or tort bucket" when HERA's limitations periods apply.

Assuming without deciding[30] that HERA's limitations periods would apply to Ocwen's claims, they would still be timely. SFR argues that Ocwen's claims can't be deemed contract-based, so they must fall into the tort bucket and would be subject to HERA's three-year deadline, making them untimely. But § 4617(b)(12)(A)(ii) says that tort claims are governed by "the longer of" three years or "the period applicable under State law." As I have already held that the period applicable under state law is four years,[31] Ocwen would still get the benefit of NRS 11.220's longer four-year window, making its claims timely even if HERA's statutes of limitations apply.

---

[27] 12 U.S.C. § 4617(b)(12)(A).

[28] *Id.*

[29] *See Fed. Hous. Fin. Agency v. LN Mgmt. LLC, Series 2937 Barboursville*, 369 F. Supp. 3d 1101, 1108–09 (D. Nev. March 11, 2019) (the analysis from which I incorporate herein).

[30] No court has yet held that HERA's statutes of limitations apply to loan servicers, and the statute expressly states that these periods govern claims brought by the Agency.

[31] ECF No. 35 at 8–10.

7

SFR asks me to reconsider my conclusion that these claims are subject to that four-year statute, adding to its prior timeliness challenge that, because these claims would not exist but for NRS 116's foreclosure provisions, they are subject to the three-year limitations period in NRS 11.190(3)(a).[32] That statute governs actions "upon a liability created by statute, other than a penalty or forfeiture."[33] Ocwen's claim, however, is not an action upon a liability created by statute; it is an equitable action to determine adverse interests in real property, as codified in NRS 40.010.[34] Section 40.010 does not create liability, and a party cannot impose liability upon another party through that statute. Rather, the statute merely allows for a proceeding to determine adverse claims to property. Even if I interpret Ocwen's quiet-title claims as ones under NRS 116.3116, that still would not trigger NRS 11.090(3)(a) because Ocwen does not seek to impose *liability* under that statute.[35] I thus maintain that Ocwen's claims are governed by the four-year statute of limitations in NRS 11.220, and they are timely.

**C.    The Federal Foreclosure Bar saved the deed of trust from extinguishment.**

With the timeliness of Ocwen's claims now twice established, I turn to its motion and consider whether Ocwen has shown that it is entitled to summary judgment on its quiet-title

---

[32] ECF No. 57 at 10–13. SFR also suggests that I should not assume there is no limitations period for these claims and instead borrow the period from other foreclosure-related provisions. *Id*. at 12–13. I did not merely assume that no period applies—I reached that conclusion after a detailed analysis. *See* ECF No. 35. And SFR merely states without providing persuasive reasoning that other provisions would be more applicable. SFR has not persuaded me that I should reconsider—let alone retreat from—my original holding.

[33] Nev. Rev. Stat. § 11.190(3)(a).

[34] *See* ECF No. 35 at *supra* at p. 5; *Shadow Wood HOA*, 366 P.3d at 1111 (recounting that "NRS 40.010 essentially codified the court's existing equity jurisprudence" (comma omitted)).

[35] To the extent that Ocwen argues that its claims are governed by five-year statutes of limitation, ECF No. 63 at 3–8, I already rejected that argument, *see* ECF No. 35 at 8–10, and Ocwen has not persuaded me to reconsider.

claim based on the Federal Foreclosure Bar.[36] In *Berezovsky v. Moniz*, the Ninth Circuit held that "the Federal Foreclosure Bar supersedes the Nevada superpriority lien provision,"[37] preventing a non-judicial foreclosure sale under NRS Chapter 116 from extinguishing a Freddie Mac deed of trust while this lender is under FHFA conservatorship. So, the question is whether Ocwen has shown that a Freddie Mac interest in this property was protected from the legal effect of NRS 116.3116 by the Federal Foreclosure Bar. The record supports that conclusion, leaving no genuine issue of material fact.

There is no dispute that Freddie Mac was under the FHFA's conservatorship in 2013, nor is there any legitimate dispute that the agency did not consent to wiping out Freddie Mac's deed of trust through this foreclosure.[38] SFR does challenge, however, whether Ocwen has established that the deed of trust belonged to Freddie Mac at the time of the foreclosure sale and that Ocwen is the servicer. Ocwen offers the affidavit of Freddie Mac's Loss Mitigation Senior, Jeffrey K. Jenkins, and corroborating documents to show that Freddie Mac had a valid and enforceable deed of trust on the property at the time of the sale and that Ocwen is its loan servicer now and since August 2013.[39] Those documents include printouts of computer

---

[36] Although Ocwen does not state that its motion seeks only a partial judgment on its Federal Foreclosure Bar-based claim, I presume that is its intention because the motion is silent as to Ocwen's *Bourne Valley* based due-process theory. *See generally* ECF No. 56.

[37] *Berezovsky*, 869 F.3d at 931.

[38] Indeed, the FHFA issued a statement dated April 21, 2015, "confirm[ing] that it has not consented, and will not consent in the future, to the foreclosure or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens." ECF No. 56-3 at 2; Federal Housing Finance Agency, *Statement on HOA Super-Priority Lien Foreclosures* (Apr. 21, 2015), https://www.fhfa.gov/Media/ Public Affairs/Pages/Statement-on-HOA-Super-Priority-Lien Foreclosures.aspx (last visited 8/22/19).

[39] *See* ECF No. 56-1. SFR's assertion that Jenkins and the documents were not disclosed is belied by Ocwen's second supplemental disclosures served on April 27, 2018. ECF No. 64-1, with eight months left in the discovery period. *See* ECF No. 55.

9

records,[40] which Jenkins explains in detail, and relevant portions of Freddie Mac's publicly available Servicer Guide.[41]

I find that Jenkins's declaration sufficiently establishes his familiarity with Freddie Mac's recordkeeping system and the authenticity of the printouts to lay the foundation required by Federal Rule of Evidence 902(11). And it establishes—with no contradictory evidence from SFR—that the security interest on this property belonged to Freddie Mac at the time of the 2013 foreclosure sale, as it does today. Although the deed of trust is now held in Ocwen's name,[42] Freddie Mac's documents (including the Servicer Guide) also show that Ocwen is merely its agent for loan-servicing purposes and that the beneficial interest belongs to Freddie Mac.[43] The Nevada Supreme Court found a similar record sufficient to support summary judgment in favor of Freddie Mac based on the Federal Foreclosure Bar just last month in *Daisy Trust v. Wells Fargo Bank, N.A.*[44]

Contrary to SFR's suggestion, Ocwen need not produce a copy of the actual loan-servicing agreement. As the en banc Nevada Supreme Court held in *Daisy Trust*, declarations confirming the servicer's status, "combined with authorizations in the Guide that are generally

---

[40] SFR argues that these printouts are "irrelevant" because they were printed recently and thus tell nothing about the time period surrounding the foreclosure sale. These documents, as explained by Jenkins, contain information relevant to the time periods at issue here, so they are relevant.

[41] *Id.* at 9–164.

[42] ECF No. 5-8 at 2.

[43] *See also Berezovsky*, 869 F.3d at 932 (recognizing that "Nevada law thus recognizes that, in an agency relationship, a note owner remains a secured creditor with a property interest in the collateral even if the recorded deed of trust names only the owner's agent," and concluding that "[a]lthough the recorded deed of trust here omitted Freddie Mac's name, Freddie Mac's property interest is valid and enforceable under Nevada law").

[44] *Daisy Trust v. Wells Fargo Bank, N.A.*, __ P.3d __, 2019 WL 3366241, *5 (Nev. July 25, 2019).

10

applicable to Freddie Mac's loan servicers . . . [a]re sufficient to show that" Ocwen is "in fact Freddie Mac's loan servicer with authority to assert the Federal Foreclosure Bar on Freddie Mac's behalf."[45] Nor must Ocwen provide "the original, wet-ink signature promissory note."[46] "Producing the actual note or having" Jenkins attest that he "inspected the note would not help establish when Freddie Mac obtained ownership of the loan or that it retained such ownership as of the date of the foreclosure sale, as there is no legal requirement that an endorsement on a promissory note be dated."[47] Ocwen satisfied its burdens of proof and production on this point with the computer records and Jenkins's declaration explaining them.

SFR's additional argument that "to assert" the Federal Foreclosure Bar against SFR, "the deed of trust must be recorded in Freddie's name" was also expressly rejected in *Daisy Trust*. Like SFR, the foreclosure-sale purchaser in *Daisy Trust* argued "that Nevada's recording statutes required Freddie Mac to record its interest in the loan."[48] But the Court disagreed. It reasoned that, although the recording statutes currently require deed-of-trust assignments to be recorded, the version in effect in 2007 when Freddie Mac acquired this one was permissive, not mandatory, as it stated only that such an assignment "may be recorded."[49] Thus, the Court held, "Nevada's recording statutes did not require Freddie Mac to publicly record its ownership interest as a prerequisite for establishing that interest."[50] Freddie Mac acquired the instant deed of trust in 2007, just like the one in *Daisy Trust*, so it was not required to record its interest.

---

[45] *Id.* at *4.
[46] ECF No. 61 at 3.
[47] *Daisy Trust*, 2019 WL 3366241, *4.
[48] *Id.* at *3
[49] *Id.*
[50] *Id.*

11

SFR's contention that the sale is "presumed valid" against Freddie Mac by operation of NRS 116.31166[51] fails under the Nevada Supreme Court's holding in *Shadow Wood*. It is true that NRS 116.31166 states that certain "recitals in a deed . . . are conclusive proof of the matters recited."[52] But in *Shadow Wood*, the Court explained that "the recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure"[53] like timely mailing, posting, and recording of notices of sale. Nothing in NRS 116.31166 addresses the Federal Foreclosure Bar; if it did, it would likely be preempted just as NRS 116.3116 is.

The remainder of SFR's arguments against the application of the Federal Foreclosure Bar require me to ignore or pervert the holding of *Berezovsky*, which I decline to do. I conclude that *Berezovsky* provides the applicable legal principles for Ocwen's Federal Foreclosure Bar theory, that I am bound by those principles, and that Ocwen has shown through evidence not subject to genuine dispute that it is entitled to summary judgment on its quiet-title claim based on this theory. So, I grant summary judgment in favor of Ocwen on its Federal Foreclosure Bar claim and declare that 12 U.S.C. § 4617(j)(3) prevented the 2013 foreclosure sale from extinguishing Freddie Mac's deed of trust.

**D.     SFR is entitled to summary judgment on Ocwen's *Bourne Valley* claim.**

SFR has demonstrated that Freddie Mac's other quiet-title theory—that the statutory foreclosure scheme was unconstitutional—fails as a matter of law. SFR pleads this theory based on a Ninth Circuit panel's 2016 ruling in *Bourne Valley Court Trust v. Wells Fargo Bank* that the

---

[51] ECF No. 57 at 17–20.
[52] Nev. Rev. Stat. § 116.31166.
[53] *Shadow Wood*, 366 P.3d at 1112.

version of Chapter 116 under which this foreclosure sale was conducted "facially violated mortgage lenders' constitutional due process rights."[54] But *Bourne Valley* assumed an interpretation of Chapter 116 that the Nevada Supreme Court has since rejected,[55] and the Ninth Circuit has expressly acknowledged that *Bourne Valley* is no longer good law.[56] Ocwen's claim based on this due-process-violation theory thus fails as a matter of law, and Chapter 116 as it existed at the time of this foreclosure sale did not violate Freddie Mac or Ocwen's due process rights. I thus grant SFR's motion for summary judgment in its favor on this second quiet-title claim and dismiss that claim. But because I am declaring that the deed of trust was not extinguished during the foreclosure sale based on the Federal Foreclosure Bar, the net result is that Ocwen obtains the declaratory relief it seeks despite the failure of its due-process theory.

## Conclusion

IT IS THEREFORE ORDERED that Ocwen Loan Servicing, LLC's Motion for Summary Judgment **[ECF No. 56] is GRANTED. Summary judgment is entered in favor of Ocwen on its Federal Foreclosure Bar-based quiet-title claims and on SFR's counterclaims.** Because 12 U.S.C. § 4617(j)(3) prevented the extinguishment of the deed of trust during the 2013 HOA foreclosure sale, Ocwen is entitled to a declaration that SFR took the property subject to that interest.

IT IS FURTHER ORDERED that SFR Investments Pool 1, LLC's Motion for Summary Judgment **[ECF No. 57] is GRANTED in part: Ocwen's remaining claims are DISMISSED.**

---

[54] ECF No. 5 at ¶ 6 (*quoting Bourne Valley,* 832 F.3d at 1160).
[55] *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).
[56] *Arlington W. Twilight Homeowners Ass'n*, 920 F.3d at 624.

And with good cause appearing and no reason to delay, IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER FINAL JUDGMENT in favor of Ocwen,

**DECLARING that**

> the deed of trust for the property located at 5858 Hollingshed Court, North Las Vegas, Nevada 89086, recorded as Instrument # 20050927-002361 in the real property records of Clark County, Nevada, on 9/27/05 was not extinguished by the 8/2/13 foreclosure sale, so foreclosure-sale purchaser SFR Investments Pool 1, LLC took the property subject to the deed of trust

and CLOSE THIS CASE.

Dated: August 25, 2019

_____
U.S. District Judge Jennifer A. Dorsey